(No. 42991.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GEORGE H. PETER, JR., Appellant.

*Opinion filed October 1, 1973.—Rehearing denied Nov. 28, 1973.*

GERALD W. GETTY, Public Defender, of Chicago (GEORGE L. LINCOLN and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and BERNARD CAREY, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, George H. Peter, Jr., was convicted of murder by a jury in the circuit court of Cook County, and was sentenced to death. He has appealed directly to this court. 43 Ill.2d R. 603.

On the morning of September 16, 1967, the body of a young girl was discovered in the Chicago River in LaBaugh Woods, a forest preserve area in Chicago. Death was caused by asphyxiation due to strangulation and submersion. She had last been seen alive the night before by three friends (two boys and a girl) with whom she had been walking. At approximately 11:30 that evening, she decided to "hitch" a ride, and was picked up by a person driving a Volkswagen convertible. When she entered the automobile, she was carrying a purse, a brown sweater, and a paperback book entitled "Valley of the Dolls."

On September 17, responding to an anonymous telephone call, the police went to an address where they

had been told a person having information about the murder could be found. At that address they spoke with Diane Manuel, who related that shortly before the arrival of the police the defendant had been there, and had told her brother, David Manuel, that he had committed the crime.

Shortly thereafter David Manuel contacted the police. When interviewed he told them that defendant owned a 1967 blue Volkswagen convertible, and had confessed to him that he had committed the crime. He stated that the defendant had described how he killed the victim. In addition, he related that the defendant had informed him that he had placed the victim's missing sweater and purse in a garbage can near his home and that he had in his glove compartment a book, "Valley of the Dolls," which belonged to the girl and which he had shown him.

The police were also told that the defendant was at his father-in-law's house. The police immediately went to that location and arrested the defendant and charged him with the crime. When arrested, the defendant was asked if he owned a car. He stated that he owned a blue Volkswagen convertible which was parked at the curb and gave the keys to the automobile to the police. The defendant's wife, who was present when the arrest was made, accompanied by an officer, drove the car to police headquarters where it was locked pending investigation by the crime laboratory. Shortly after the defendant's arrival at police headquarters, the crime laboratory arrived, took pictures of the car, and dusted it for fingerprints. The arresting officer also searched the car and recovered from the glove compartment a paperback edition of the book "Valley of the Dolls." He also found, behind a seat, an empty box that was labeled "handcuff with keys." Both of these items were inventoried, sent to the crime laboratory for examination, and later introduced at trial.

The appellant urges 17 primary grounds for reversal, several of which are subdivided into multiple issues. Also,

his brief exceeds the 75-page limitation for printed briefs established in our Rule 341 (50 Ill.2d R. 341). We are well aware that defendants often charge that they were represented by incompetent counsel and we are sympathetic with the desire of attorneys to avoid such a charge. We do not feel, however, that it is necessary to make an appellant's brief a catalogue of every conceivable error. A defendant is not entitled to an error-free trial and few trials are free from error. A more selective presentation involving substantial rights or matters prejudicial to the defendant would more precisely define the issues.

The defendant raises several questions concerning fingerprints. The book "Valley of the Dolls" which had been seized from defendant's Volkswagen was examined by the police for fingerprints. One of the pages was found to contain the fingerprint of the victim's left little finger. The defendant first contends that he was denied the opportunity to obtain the book for inspection by experts to ascertain if other fingerprints were on the book which would tend to exculpate the defendant. He testified at the trial that the book belonged to his wife and had been in his car for several days. There was other testimony that his wife and another person had handled the book. The defendant contends that if he would have been permitted to examine the book, prints other than those photographed by the police may have been found. The record contradicts the defendant's contention that he was denied access to the book. The public defender was permitted to examine the physical evidence in the crime laboratory. At that time the book was sealed in a container. The public defender and the prosecutor agreed that they would not at that time break the seal. The defendant was furnished with copies of photographs of the fingerprints found on the book. At a subsequent hearing on a motion to produce the physical evidence defense counsel indicated that he did not at that time have an expert to examine the evidence requested. He inquired of the court that if he were to

procure the services of an expert would the court at a later date permit the expert to examine the original items, including the book. The court informed the defense counsel that in such an event if the expert finds it necessary to examine the originals he should so inform the court. This does not amount to a denial of a request to make an examination of the book for other fingerprints. The defendant also contends that the photographs of the fingerprints which were furnished to him were inadequate. He says that he should have been furnished with the original impressions. The court made the same offer as it did with regard to the book. At the hearing on the motion the court informed defendant's counsel that if the expert found the copies inadequate he should so inform the court. These rulings do not amount to the withholding of potentially exculpatory evidence.

The officer who identified the fingerprint on the book as that of the victim's left little finger testified that he found 12 points of comparison between the prints lifted from the book and the impression taken from the body of the deceased. The defendant now contends that he was limited in the cross-examination of this officer to the extent that he was not permitted to show that some authorities hold that more than 12 points of similarity are necessary for identification. Here again, the record does not support the defendant's contention. The witness was extensively cross-examined on this point and admitted that in England and in other countries 16 or more points of similarity are required for identification.

During the cross-examination of this same witness the defense counsel suggested that if the jury were to view these fingerprints through a magnifying glass or to view an enlargement of the exhibit showing the fingerprints they would be able to see the points of similarity. In objecting to this question the prosecutor stated that it was not within the province of the jury to analyze the fingerprints. That, he stated, was the function of the expert witness and

it was for the jury in turn to determine the expert's credibility. The court sustained the objection. The defendant now contends that by sustaining this objection the court gave the jury the impression that the prosecutor's comments were a correct statement of the law. He further contends that this led the jury to believe that they could not make comparisons of the prints. The mere act of sustaining an objection does not indicate the court's approval of the comments made by counsel. We do not draw from the court's rulings the conclusion which defendant urges. Obviously, the jury cannot be permitted to engage in unlimited speculation as to the presence of points of similarity between two photographs of fingerprints. The jury must be assisted by the testimony of experts in the field. Identification by means of fingerprints is a science. Those who are experts in the field have peculiar knowledge not common to the world. (*People v. Jennings, 252 Ill.2d 534.*) This court held in *People v. Speck, 41 Ill.2d 177,* that it was not error for the court to refuse to permit the jury to compare fingerprint exhibits with the aid of a magnifying glass. (See Wigmore, Evidence (3d ed. 1940), sec. 414(a).) When the court sustained the prosecutor's objection in this case he did no more than to indicate to the jury that it did not have the unlimited prerogative to speculate as to the presence or absence of points of similarity in the fingerprint exhibits. This was not error.

During the cross-examination of this same witness the defense counsel asked him how often he had testified in court as to his findings during the past year or two. He stated he had not testified in court during this period because he was informed that the defendants in the other cases he had investigated had pleaded guilty. The defendant now objects that this is hearsay and was designed to influence the jury to believe that the witness's fingerprint evaluation was correct. We do not think that this is a legitimate inference to be drawn from this statement,

which was elicited from the witness by the defense counsel during cross-examination. The defendant also complains that during cross-examination this same witness gave further damaging hearsay testimony when he stated that another officer who did not testify corroborated his conclusions. This witness was asked: Question: "Who else was assigned to this case?" Answer: "Officer Mortimer. He corroborated me in this particular instance." This statement was volunteered in response to a question put to the witness by defense counsel on cross-examination. If he felt that the answer was not responsive or was prejudicial he should have moved to strike the answer at the time it was given. We consider that any objection to this comment has been waived. *People v. Anderson, 48 Ill.2d 488.*

It is next contended that the attempts of the defense counsel to investigate the case were frustrated by the refusal of police officers to answer questions. This court stated in *People v. Glover, 49 Ill.2d 78, 83,* that a police officer, as well as the State's Attorney, has a duty to protect the innocent, and should within reasonable limits with respect to time and place be available for interview by the defense counsel. We there held that the court should have entered an order requiring the police officers to confer with counsel. In *Glover,* while defense counsel was talking to police officers the chief of police interrupted the interview and informed counsel it was his policy and the policy of the police department that police officers would not be permitted to discuss a case with defense counsel prior to trial. Under this situation we held that the trial court should have granted the defendant's motion.

Since *Glover,* we have adopted Rule 415(a) (50 Ill.2d R. 415(a)) (effective October 1, 1971), which specifically provides that (with certain exceptions) neither counsel nor other prosecution or defense personnel should advise persons having relevant information to refrain from discussing the case with opposing counsel. In this case the trial court recognized the duty of the State to refrain from

instructing witnesses not to talk to defense counsel. During a hearing on a motion the defense counsel complained of the refusal of police officers to discuss the case with him. The court stated to defense counsel: "You talk to anyone you are seeking information from in connection with this evidence. If they tell you they will not answer questions because they have been instructed not to do so by the State, you forthwith let me know and I will subpoena them into court and put them under oath." There was additional colloquy between court and counsel which indicated that the court was not satisfied from the mere allegations of counsel that the officer's refusal to discuss the case with him was directed by the officer's superior or by the prosecutor.

The principle announced in *Glover* and in Rule 415(a) does not abrogate the general proposition that a prosecution witness need not grant an interview to defense counsel unless he chooses to do so. (*People v. Touhy, 361 Ill. 332, 348; People v. Mason, 301 Ill. 370, 379; People v. Duncan, 261 Ill. 339, 343.*) More recent applications of this general rule by the appellate courts of this State are found in *People v. Nunn, 130 Ill. App. 2d 86; People v. Lewis, 112 Ill. App. 2d 1, 6; People v. Mitchell, 16 Ill. App. 2d 189, 193.* The defense counsel in his arguments to the trial court freely charged that the refusal of the officers to discuss the case with him was part of a prosecutorial plot. However, he did not establish to the satisfaction of the trial court that such was the case.

On this same subject the defendant further contends that it was error for the trial court not to permit him on cross-examination of these witnesses to elicit the fact that they had refused to talk to defense counsel. "As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the

defendant, that a reviewing court will interfere." (*People v. Gallo, 54 Ill.2d 343, 356; People v. Halteman, 10 Ill.2d 74, 86.*) The trial court did not abuse its discretion to the prejudice of the defendant by its failure to permit this line of questioning.

The defendant made a pretrial motion to suppress any and all statements made by him during custodial interrogation. He also made a pretrial motion to suppress physical evidence obtained in the search of his vehicle. Separate hearings were conducted on both of these motions. The defendant now contends that the court erred when, during these hearings, it refused to compel the State to produce for use in cross-examination notes and reports which the witnesses testified they had made during their investigation.

Following the hearing on the motion to suppress any statements made by the defendant the court denied the motion to suppress. At the trial the State offered no evidence of any pretrial statement of the defendant until rebuttal. Defendant had testified that on the night the crime was committed he and his wife were riding in their automobile. They drove south from their apartment which was located at 7600 North in the city of Chicago. They were going to the Old Town area of Chicago but at 4400 North they changed their minds and again drove in a northerly direction. On rebuttal the police officer testified that during the interrogation the defendant had stated that when he and his wife went for a ride they drove north, and that during the interrogation the defendant did not mention Old Town or driving south from their apartment.

The defendant relies on *People v. Scott, 29 Ill.2d 97.* In that case a confession of the defendant was involved. At the hearing on the motion to suppress the confession the trial court refused to order the police officer to produce notes made during the interrogation. This court held that the refusal was error. That portion of the defendant's statement used in this case does not approach the

significance of the confession to the State's case in *Scott*. Whether the court's refusal to order production of these notes and reports at the pretrial hearing was prejudicial must be determined within the context of the entire case. (*People v. Conrad, 41 Ill.2d 13.*) The testimony of the police officer in rebuttal was of little importance to the State's case and had no relation to the issues involved. We find no prejudicial error in the court's ruling.

The hearing on the motion to suppress physical evidence related to physical evidence taken from the defendant's vehicle only. At the hearing, on direct examination, a police officer testified concerning his total participation in the case; the investigation in LaBaugh Woods, the interview with the two boys and girl who were the victim's three companions on the night of the crime, the anonymous phone call, the interview with Diane Manuel, the later interview with her brother, David Manuel, the arrest of the defendant, the seizure of the defendant's Volkswagen and securing it at the police station, the inspection of the vehicle by the crime laboratory for fingerprints, the officer's subsequent search of the vehicle during which he recovered the book from the glove compartment and the handcuff box from behind the back seat and the subsequent recovery of the purse and sweater from the garbage can. On cross-examination defense counsel made the blanket request for the production of all the police reports pertinent to the officer's testimony and his grand jury testimony pertaining to the subject of his testimony on direct examination. Defense counsel was furnished with all the reports pertaining to this officer's testimony and his testimony before the grand jury prior to cross-examination at the trial. Now after having had the opportunity to review these documents, defendant points out as the only possible prejudicial effect of the court's failure to order this production at the hearing on the motion the fact that the officer testified that the victim's companions said the Volkswagen was

blue. The police report however states that both of the male companions said the Volkswagen was red, while the girl said it was blue. On cross-examination at the hearing on the motion to suppress, the officer stated that one of the boys did say that the Volkswagen was red and that that information was included in the police report. The defendant has not demonstrated by this slight deviation any prejudicial effect of the court's failure to order the production of these reports. Again, viewing the effect of the court's ruling in the context of the entire case, we find no prejudicial error in this refusal. *People v. Conrad, 41 Ill.2d 13.*

The defendant next contends that the warrantless seizure and subsequent search of his car violated his fourth-amendment rights. He relies on *Coolidge v. New Hampshire, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022,* in support of his position. In *Coolidge,* as in this case, the defendant was accused of killing a young girl. The defendant and his automobile had been seen near the place where the girl's body was found. He was later arrested in his home. His automobile, which was parked in his driveway, was seized following his arrest and taken to the police station where it was searched. Items removed from it were later introduced in evidence at his trial. The Supreme Court held the warrantless seizure of the car and the subsequent search violated the defendant's fourth-amendment rights. In *Coolidge* the Supreme Court distinguished *Chambers v. Maroney, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975,* on the ground that in *Chambers* the defendant and his accomplices had been arrested in the automobile which the police had probable cause to believe had been used in the commission of a recent crime.

Although the facts in our case appear to be such as to make *Coolidge* controlling, there are substantial differences between the two cases on the factual pattern which in *Coolidge* caused five members of the Supreme Court to agree that the search was invalid. Basic to the

court's decision was the fact that the officers knew that the defendant's car was at his home and planned to seize it. They had ample opportunity to secure a search warrant. In fact when the officers went to the defendant's home they had in their possession a warrant for the seizure of the car but the warrant was subsequently declared invalid. The defendant had been a suspect in the crime for several weeks and had been questioned concerning it. When the officers went to his home they intended to arrest him and seize the car. Although the arrest was lawful and the evidence was "in plain view," the officers were not justified in seizing it without a warrant. There were in this factual picture no exigent circumstances which justified dispensing with the requirement of a search warrant.

By contrast, in our case the police received the first indication that the defendant was implicated in the crime by an anonymous phone call at 10:30 A.M. At about 2 P.M. the same day the defendant was arrested and his auto seized. Between the first phone call and the arrest the officers were putting together the chain of evidence which led to the defendant's father-in-law's house and the arrest. As the officers were taking the defendant from the house he was asked if he owned an automobile. He acknowledged that he did and indicated that the blue Volkswagen convertible at the curb was his. At this moment for the first time the officers became aware of the location of the Volkswagen. No question has been raised as to the legality of the defendant's arrest. In the process of the arrest the officers had inadvertently come upon evidence of the crime which was in plain view. They had probable cause to believe that a book which had belonged to the deceased was in the car's glove compartment. If the vehicle was not then seized the defendant's wife, his in-laws, his parents or his friends could have secreted the vehicle or destroyed any evidence it contained. We conclude that the officers were faced with exigent circumstances which justified the warrantless seizure of the automobile.

Some may contend that the officers could have left a detail to immobilize the vehicle and deny its use to anyone until a warrant could be secured. Such conduct would itself constitute a warrantless seizure of the vehicle. In that event there is little to choose in terms of practical consequences between an immediate seizure and search without a warrant and the car's immobilization until a warrant is obtained. *Chambers v. Maroney, 399 U.S. 42, 52, 26 L. Ed. 2d 419, 429, 90 S. Ct. 1975.*

While it is true that lawful custody of an automobile does not itself dispense with constitutional requirements concerning searches thereafter made of the vehicle, the reason for and nature of the custody of the vehicle may justify its subsequent search without a warrant. In *Preston v. United States, 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881,* the defendant had been arrested for vagrancy and his car was held in custody. The fact that the police had custody of the vehicle was totally unrelated to the vagrancy charge for which Preston had been arrested. The search of the car while thus being held by the police violated Preston's fourth-amendment rights. However, where the car is lawfully seized and held as an instrument of or as evidence concerning the crime for which the defendant has been arrested, the subsequent search of the car is closely related to the reason for defendant's arrest and does not violate his fourth-amendment rights. In such circumstances it is no answer to say that the police could have obtained a warrant after they had seized the vehicle and before conducting the search, for "the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." (*Cooper v. California, 386 U.S. 58, 62, 17 L. Ed. 2d 730, 734, 87 S. Ct. 788.*) Under these circumstances a subsequent search of the vehicle following its lawful seizure is reasonable. The items which the police officers recovered from the defendant's vehicle by the search conducted subsequent to its seizure were properly admitted into evidence.

The next issue raised by the defendant involves the question of substitution of judges. It is admitted that the motion was not made within 10 days after the case had been placed on the judge's trial call as required by section 114—5(a) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1967, ch. 38, par. 114—5(a).) It is also admitted that the motion for substitution of judges was made after the judge had conducted several hearings and had ruled on several motions which had been made by the defendant. At the time the motion was made, provisions for substitution of judges in criminal cases were contained in both "An Act to revise the law in relation to change of venue" (Ill. Rev. Stat. 1967, ch. 146, pars. 18 through 21) and the Code of Criminal Procedure (Ill. Rev. Stat. 1967, ch. 38, par. 114—5). The provisions of chapter 146 relating to changes of venue of criminal cases (pars. 18-21) were subsequently repealed, effective September 17, 1969. The defendant contends that under the provisions of chapter 146 which were then in effect, the 10-day limitation for the presentation of a motion provided for in section 114—5(a) of the Code of Criminal Procedure did not apply. He argues that he had an absolute right to a change of venue upon the presentation of the proper motion at any time knowledge of the prejudice of the trial judge came to his attention.

The provisions of chapter 146 relating to substitution of judges in criminal cases were incorporated in section 114—5 of the Code of Criminal Procedure. Prior to the enactment of this section, a defendant had an absolute right to a substitution of judges if the requirements of the statute were met upon the filing of a proper petition alleging the prejudice of a judge. When the petition was filed the judge lost all power and authority over the case except to enter the orders necessary to effectuate the change. (*People v. Kostos, 21 Ill.2d 451; People v. Davis, 10 Ill.2d 430, 434.*) It was not proper for the court to inquire into the truth of the allegations of prejudice

contained in the petition. *People v. Mosley, 24 Ill.2d 565.*

Under section 114—5 of the Code of Criminal Procedure, the absolute right to a change of venue previously given to the defendant was retained in paragraph (a). However, to avail oneself of this absolute right it is necessary that the motion be filed within 10 days after the cause has been placed on the judge's trial call. Paragraph (c) of said section provides for motions for substitution of judges after the 10-day period and provides: "*** any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." Thus, in paragraph (a) is preserved the absolute right to a substitution of judges if filed within the 10-day limitation, and in paragraph (c) the defendant is given the additional right to file his motion at any time. However, the right to a substitution of judges under (c) is not absolute but the merits of the motion must be established at a hearing. The motion in our case not having been filed within the 10-day limitation period provided in paragraph (a), defendant did not have an absolute right to a substitution of judges.

There were in fact two motions made for a substitution of judges. Both were filed after the ten-day limitation period referred to above. The first motion was filed about May 10, 1968, and the court immediately conducted a hearing pursuant to paragraph (c). The evidence offered consisted primarily of hearsay evidence as to the general feeling about the crime in the neighborhood where the judge resided and testimony of the defendant, his wife and his mother-in-law that they had a feeling that the judge was prejudiced against the defendant. The evidence did not establish the prejudice of the trial judge and the court so held following the hearing.

The second motion for substitution of judges was filed about November 1, 1968, and a hearing again was immediately held on the motion. The gist of the evidence

at this hearing was that the prosecutor had referred to the defense counsel as a pathological liar in the presence of the judge, which the court properly held did not show that the judge was prejudiced against the defendant or his counsel. Thus the requirements of the statute were fully complied with and the denial of the motions for substitution of judges was proper.

The defense counsel during cross-examination of a forest ranger established that the entry gate to LaBaugh Woods was secured with a chain in the evening and that concrete posts and fences blocked the entry into the park after closing hours, intimating that one who was not acquainted with the area would not have access to the park after the gates were closed. Later the prosecutor offered to stipulate instead of presenting the testimony of a witness that the defendant was familiar with the interior of the park and in fact had previously been there after closing time. After defense counsel had refused to so stipulate, a young lady testified that approximately two weeks prior to the murder she was in LaBaugh Woods with the defendant at 11:30 P.M. after the park had been closed. The defendant now contends that this testimony was irrelevant. We do not agree.

The test of the admissibility of evidence is whether it fairly tends to prove the particular offense charged, and any circumstances may be put in evidence which tend to make the proposition at issue more or less probable. (*People v. Nemke, 46 Ill.2d 49; People v. Galloway, 28 Ill.2d 355.*) In light of the cross-examination of the forest ranger the question of whether of not the defendant was familiar with the park was relevant and the testimony was properly admitted.

David Manuel testified that the defendant had previously discussed with him plans to pick up a girl and rape and kill her. He testified that the defendant had in his presence approached girls in attempts to carry out his plan. The defendant now complains of this testimony as

suggesting that the defendant had been involved in other incidents. During the course of the interrogation the defendant made no objection to the relevancy of this testimony and cross-examined the witness with regard to it. The following day the defense counsel presented a motion to the court objecting to the relevancy of this testimony and contended that it constituted evidence of other crimes and was thus inadmissible. Following the argument of the defendant's motion the trial court stated that technically the testimony did not constitute evidence of other crimes. However, he allowed the defendant's motion and struck that portion of David Manuel's testimony relating to these other incidents. In view of the defendant's failure to object to the relevancy of the testimony until after the witness had testified and also in view of the court's order allowing the defendant's motion to strike this testimony and instructing the jury to disregard it, the defendant cannot now raise this issue on appeal.

The defendant claims that prejudicial error was committed in several instances relating to situations which developed during the cross-examination of both the State's witnesses and the defense witnesses. We have examined the situations complained of and conclude that the alleged errors have not been demonstrated. The defendant asks this court to speculate that the circumstances alluded to have deprived him of a fair trial. Some of the occurrences were not proper and should not have occurred. However, in many instances they were invited or provoked by defense counsel and he cannot now be heard to complain. (*People v. Anderson, 48 Ill.2d 488; People v. Taylor, 32 Ill.2d 165.*) There is no need to lengthen this opinion further by detailing each instance complained of. We have examined the record and do not find the prejudicial error of which defendant complains.

Nor do we think that the prosecutor's comments during final argument concerning the lack of evidence

contradicting the evidence the State had offered on the subject of fingerprints shifted the burden of proof to the defendant. The absence of such evidence is a proper area of comment, and counsel may properly emphasize uncontradicted expert testimony.

We need not consider the defendant's objections to the prosecutor's *voir dire* examination concerning the death penalty. This question has been rendered moot by the decisions of the Supreme Court of the United States. *Moore v. Illinois, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562; Furman v. Georgia, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726.*

For the reasons we have stated herein we are of the opinion that the judgment of conviction should be affirmed. However, because of the decisions of the Supreme Court in *Moore v. Illinois* and *Furman v. Georgia* the case must be remanded to the circuit court of Cook County for the imposition of a sentence other than death in accordance with the Unified Code of Corrections. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—1—1 *et seq.*; see *People v. King, 54 Ill.2d 291.*

*Affirmed and remanded.*