THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFRIES PERRY, a/k/a George Kelly, a/k/a Jeffies Perry, Defendant-Appellant.

First District (4th Division) No. 60786

Opinion filed December 17, 1975.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

Jeffries Perry was charged in two counts, with (1) knowingly carry-

ing a revolver concealed in an automobile; and (2) with knowingly carrying a revolver concealed in an automobile within five years of his release from the Illinois Penitentiary in violation of sections 24—1(a)(4) and 24—1(b) of the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, §§ 24—1(a)(4), 24—1(b)). At trial in the Circuit Court of Cook County the first count of the indictment was dropped, and the jury found him guilty of the second count, unlawful use of weapons within five years of release from the penitentiary. The court sentenced him to a term of three to ten years.

The issues presented for review are (1) whether the introduction of evidence of a prior conviction for the purpose of proving an element of the offense unconstitutionally circumvented the defendant's right to remain silent, (2) whether the prosecution's presentation of evidence of the defendant's prior conviction was so inflammatory as to deny him a fair trial, (3) whether the indictment for unlawful use of weapons within five years of release from the penitentiary is fatally defective to allege a mental state with respect to the release from the penitentiary, (4) whether the refusal of the trial judge to give an instruction with respect to limiting the use of his prior conviction constituted reversible error, and (5) whether it was error to deny the defendant's petition for substitution of judges.

The arresting officers, Michael Kill and David Kopala, testified that on November 24, 1971, at about 3:30 a.m., they were driving west on Roosevelt Road when they saw an eastbound car being illegally driven to the left of the center yellow line. Officer Kill executed a U-turn and began following the car, flashing the blue mars light and the spotlight. The car being driven by defendant continued along Roosevelt Road for about two blocks and then turned right on Homan Avenue, and stopped after a block and a half.

Two men got out of the car and Officer Kopala questioned and searched them, while Officer Kill "covered" him. Officer Kill observed the defendant, who was still in the car, reach up and place a revolver in the padding of the convertible top. He ordered him to get out of the car and asked for his driver's license. He then searched the car and found a loaded .38 revolver.

The defense presented the testimony of one of the defendant's sons, Edwin Perry, who had been a passenger in the car on the night of the incident along with his brother, Albert. Edwin stated he did not notice a police car following them or that a mars light or a spotlight was used. When they arrived at their Homan Avenue address, he and his brother got out of the car and went to the door, whereupon a police officer

told them to stop and raise their hands. Officer Kopala searched them and they went back to the car, where Officer Kill attempted to open the trunk of the car with Edwin's keys. At this point the defendant got out of the car, and asked what the trouble was. He provided his own keys and the trunk was opened and searched. The interior of the car was also searched, and Officer Kopala found a weapon. Edwin had never seen it before and did not know to whom it belonged.

On December 26, 1972, the court held a hearing on the defendant's motion to quash the arrest and suppress evidence. On January 12, 1973, the hearing resumed and the motion was denied. On March 8, 1973, the defendant filed an affidavit and petition for substitution of judges, which was denied.

At trial the defendant refused to stipulate to his prior conviction, and the court asked the prospective jurors if any of them would be prejudiced by the fact the defendant had previously been convicted of murder. The court excused four jurors who responded affirmatively to the question.

The prosecution's first witness was Samuel Rosen, the Chief Clerk of the Circuit Court, Criminal Division. At the direction of the prosecution, Mr. Rosen read the entire 1954 murder indictment to the jury, including a portion reciting that the defendant murdered Robert Gottstein by shooting him with a revolver in the head and in the body. Mr. Rosen also recited the dates and orders from the half-sheet, including the defendant's plea of not guilty, the verdict of the jury that the defendant was adjudged guilty of murder and sentenced to death, the denial of the defendant's post-trial motions, the entry of judgment on the jury's verdict, the sentence of death, the affirmance of defendant's conviction by the Illinois Supreme Court, and the fixing of August 2, 1957, as the date of the defendant's execution. Finally, Mr. Rosen recited the order commuting the defendant's sentence of execution by electrocution to 99 years' imprisonment.

The prosecution's next witness was Donald Kelly, the identification supervisor at Stateville. He testified the defendant was the same person he fingerprinted in 1968 upon his release from the penitentiary.

The defendant first contends his right to remain silent was unconstitutionally circumvented because informing the jury of his prior conviction is unnecessary to achieve the legislature's purpose of enhancing punishment. The essence of the argument is that release from the penitentiary is not an element of guilt, but rather serves to enhance punishment for the guilty. Because Illinois juries have no sentencing powers, there is no purpose to be served by informing them of the prior convic-

tion. Normally, the principal benefit conferred by the constitutional privilege against self-incrimination upon a criminal defendant with a recent felony conviction is the conviction must be concealed from the jury as long as he does not take the stand. Thus, the defendant argues, it is the destruction of this protection inherent in the right to remain silent that constitutes the circumvention of the right.

■■ In *People v. Ostrand* (1966), 35 Ill.2d 520, 529, the Illinois Supreme Court expressly rejected this contention:

"Defendant argues that the question of whether he has been convicted of a prior felony is not an element of the offense, but merely relates to the severity of the sentence which may be imposed. However, violation of section 24—1(a)(4), in the absence of a prior felony conviction within 5 years is a misdemeanor, while violation of that same section after having been convicted of a felony within the previous 5 years constitutes a felony (sec. 24—1 (b)) as misdemeanor and felony are defined in the Criminal Code of 1961 (Ill. Rev. Stat. 1961, chap. 38, pars. 2—11, 2—7). Under such circumstances, it was not only proper to allow the allegation and proof of a prior felony conviction, but it was necessary in order to prove defendant's commission of the felony of carrying a concealed weapon."

(Also see *People v. Dixon* (1970), 46 Ill.2d 502; *People v. Owens* (1967), 37 Ill.2d 131.) In the case of *People v. Johnson* (1975), 27 Ill.App.3d 1047, the defendant argued the was being denied his right to remain silent under similar circumstances to the case at bar and the court rejected the argument, pointing out that evidence of prior crimes may be brought out at trial for purposes other than impeachment. And in the case of *People v. Taylor* (1975), 31 Ill.App.3d 20, 27, this court stated:

"We are well aware of the fact that under the enhanced penalty procedure the jury learns of prior offenses committed by the defendant; however, we feel the possibility of prejudice to defendant is outweighed by the State's interest in protecting its citizenry by keeping firearms out of the hands of convicted felons. Moreover, defendant's interest can be protected by limiting instructions or by the discretion of the judge in limiting or forbidding the admission of particularly prejudicial evidence."

In view of the determination of the Illinois Supreme Court that release from the penitentiary is an element of the crime which must be proved, and in view of the determination of the United States Supreme Court in *Spencer v. Texas* (1967), 385 U.S. 554, 17 L.Ed.2d 606, 87 S.Ct. 648,

that such a procedure is not unconstitutional, we hold the defendant's right to remain silent has not been violated.

The defendant next contends the prosecution's presentation of evidence of his prior conviction was unnecessary and inflammatory, and denied him a fair trial. He first objects to the order of the presentation of evidence in which no evidence of the weapons violation was presented until after presentation of the evidence concerning his identity as a convicted murderer. Second, he argues the content of the evidence was inflammatory.

The Chief Clerk of the Criminal Division read the complete 1954 murder indictment, including the portion stating the deceased had been shot in the head with a revolver. He then read orders from the half-sheet including the defendant's plea of not guilty, the guilty verdict of the jury, the sentence of death entered by the jury, the denial of his post-trial motions, the affirmance of conviction by the Illinois Supreme Court, and the affirmance of the death sentence by the same court. He also read the order fixing the date of the defendant's execution and the order of Governor Stratton commuting the death sentence to 99 years' imprisonment.

The defendant further contends the order and content of the prosecution's proof with respect to the prior conviction were emphasized during closing argument, and the entire procedure invoked at trial went beyond the dictates of *Spencer v. Texas* (1967), 385 U.S. 554, 17 L.Ed.2d 606, 87 S.Ct. 648. In that case the court noted that the evidence in recidivist cases is usually of a documentary nature and there was no claim its presentation was inflammatory.

■■ We condemn the manner in which the evidence of the defendant's prior conviction was presented to the jury, but we hold that no reversible error was committed because in this case, it could not have changed the result. We see no necessity for the reiteration of the gruesome details of the prior indictment and conviction, and suggest the trial court not permit it. The defendant's prior conviction and release could have been shown by simple documentary proof and a witness for identification purposes.

Although the presentation of the evidence was unquestionably inflammatory, the testimony of Officer Kill was that he saw the defendant place the weapon in the padding of the roof of the automobile, and the testimony of the defendant's son was that a gun was found in the car. Under these circumstances, the presentation could not be said to be material to the outcome of the trial. *People v. Nicholls* (1969), 42 Ill.2d 91.

In addition the jury was adequately instructed to mitigate any prejudice to the defendant. The prospective jurors were informed of the defendant's murder conviction prior to *voir dire* and were given an opportunity to remove themselves if they felt unable to give him a fair trial. The court also instructed the jury that any evidence received for a limited purpose was not to be considered for any other purpose.

The defendant next contends the indictment for unlawful use of weapons within five years of his release from the penitentiary is fatally defective for failure to allege a mental state with respect to the release from the penitentiary. He argues that because *Ostrand* makes release from the penitentiary within five years of the weapons violation an element of the felony offense, there must be an allegation of mental state with respect to the release order to conform to section 4—3 of the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 4—3). That section provides:

> "A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7."

■■ We deem this argument to be without merit. Count 1 of the indictment stated in part the defendant committed the offense of unlawful use of weapons in that he knowingly concealed a weapon in a motor vehicle. Count 2 differs from Count 1 in its essential language only insofar as it relates to the defendant's release from the penitentiary. Therefore, we believe the mental state alleged in Count 2 effectively refers to his release from the penitentiary, and the requirements of section 4—3 have been met.

■■ The defendant contends the court erred in refusing to instruct the jury with IPI Criminal 3.14, which provides:

> "Evidence has been received that the defendant has been involved in [crimes] [a crime] other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's [identification-presence-intent-motion-design-knowledge]. This evidence is to be considered by you for only the limited purpose for which it was received."

Illinois Supreme Court Rule 451 (Ill. Rev. Stat. 1971, ch. 110A, § 451) provides that an IPI instruction must be given only when applicable and when it accurately states the law. Here, the evidence of the defendant's prior conviction was received to prove an element of the crime for which he was under indictment, and not for any of the issues named in the IPI instruction.

■■ The court advised the jury prior to *voir dire* that the defendant's murder conviction was not to be considered as evidence with respect to his weapons offense, and the court instructed the jury at the close of the evidence that "any evidence which was received for a limited purpose should not be considered by you for any other purpose." We believe the jury was adequately instructed, and there was no error in refusing IPI Criminal 3.14.

■■ Finally, the defendant contends it was error for the court to deny his motion for substitution of judges without a hearing in violation of section 114—5(c) of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, § 114—5(c)). The defendant relies on the cases of *People v. Peter* (1973), 55 Ill.2d 443, and *People v. Ethridge* (1966), 78 Ill.App.2d 299, which require a hearing when the requisites of the statute are complied with. But in *People v. Bean* (1974), 17 Ill.App.3d 377, the court noted that the Illinois courts had by judicial interpretation engrafted an exception onto our present and preceding statutes dealing with mandatory substitution of judges. Those cases hold that a motion for mandatory substitution of judges must be made within the time period provided by statute and must also be made prior to the trial court's indicating in any way its views as to the merits of the case. (*People v. Norcutt* (1970), 44 Ill.2d 256; *People v. Chambers* (1956), 9 Ill.2d 83.) Those cases dealt with section 114—5(a), but the court in *Bean* expressly held they could apply to section 114—5(c).

In this case the motion for substitution of judges was made on February 15, 1973, and was continued until March 8, 1973, when the motion was filed with the court. But on January 12, 1973, the court had already denied the defendant's motion to quash the arrest and suppress evidence. Therefore, the defendant's motion for the substitution of judges came too late. *People v. Johnson* (1974), 24 Ill.App.3d 152.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.