THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY HINSON, Defendant-Appellant.

Fifth District   No. 77-525

Opinion filed March 27, 1979.—Rehearing denied May 15, 1979.

John Gitchoff, of Pratt, Pierce, Bradford & Gitchoff, Ltd., of East Alton, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

The defendant-appellant Larry Hinson appeals from his conviction of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)) after a jury trial in the Circuit Court of Madison County.

The State's case included evidence that the defendant was one of approximately 10 men who arrived in two vehicles at the residence of John Bilbruck in East Alton sometime between 12:45 and 12:52 p.m. on December 14, 1976. The men proceeded to the back yard where the victim, Clinton Bramlet, and his employee, Ralph Ford, were installing sewer pipe. Bramlet was operating a backhoe. One of the men, later identified by both Ford and Bramlet as the defendant, climbed upon the machine and struck Bramlet, knocking him to the ground. Bramlet was then beaten. The entire occurrence lasted about a minute. Then the men quickly departed in the two vehicles.

Ford noted the license number of one vehicle, which was later determined to be registered to Curtis Law, a co-worker of the defendant's at an Olin Corporation facility some 10 minutes by automobile from the Bilbruck residence. On December 15, Ford was taken by the police to the gate of the Olin facility where he observed some 100 workers enter the plant. He identified the defendant as Bramlet's initial assailant. While hospitalized, Bramlet identified the defendant's photograph as that of his attacker.

One of the defendant's defenses was alibi. He had been at work on December 14 with a crew of pipefitters which included Curtis Law, Red Medford (with whom the defendant was "buddied up" on the day in question), and Lyndell Johnson, the general foreman of the crew. At approximately 11:55 a.m., according to the defendant, he and Law left work and went to a tavern for lunch; they were joined by Lyndell Johnson. Law returned to work alone in his car shortly before the defendant returned to work with Johnson about 12:30 p.m. Red Medford testified that he saw the defendant back at work close to the sounding of the 12:30 plant whistle and they resumed work together at 12:35 or 12:40 p.m. where they stayed until 4:00 p.m., except for a coffee break at 2:00 or 2:30 p.m.

The defendant's brief assigns five errors to the trial court. The first concerns remarks made by the prosecutor in his closing argument regarding the defendant's failure to call Lyndell Johnson to testify in support of his defense. The defendant contends that the court's permitting these remarks was a denial of his right to a fair trial, citing *People v. Munday* (1917), 280 Ill. 32, 42, 117 N.E. 286, 292, for the rule that:

> "* * * the omission or failure of a defendant in a criminal prosecution to call as witnesses those who could testify of their

own knowledge to material facts raises no presumption of law that if called they would have testified unfavorably to him, but the jury may consider his failure to produce or to endeavor to produce such witnesses as a circumstance in determining his guilt, provided it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution."

■■ Defendant argues that because Lyndell Johnson was subpoenaed by the prosecution and was present just outside the courtroom he was accessible to the State and that the prosecutor told the jury that defendant's failure to call Johnson was substantive proof of the offense. He claims that the prosecutor's remarks in closing argument were outside the *Munday* rule.

We do not agree. A corollary to the *Munday* rule is that:

"* * * potential alibi witnesses interjected into the case by the defendant are deemed unavailable to the prosecution and comment with regard to the failure of such witnesses to testify is proper." (*People v. Mays* (1972), 3 Ill. App. 3d 512, 514, 277 N.E.2d 547, 548.)

We conclude that Lyndell Johnson was a potential alibi witness and that he was interjected into this case by the defendant.

Defendant contends Johnson was not a potential alibi witness because the offense occurred between 12:45 and 12:52 p.m. and Red Medford had accounted for the defendant's whereabouts during this period of time. However, because Johnson was with the defendant just prior to the time of the offense and because the defendant tried to prove his activities for time periods prior to and after the time of the offense, as well as during the time of the offense, Lyndell Johnson was a potential alibi witness. *People v. Anthony* (1976), 41 Ill. App. 3d 1025, 1032, 355 N.E.2d 218, 224.

■ The defendant urges that because Johnson's name was first mentioned during the prosecution's opening statement and next by a witness called by the State, Johnson's name was interjected into this case by the State. We do not agree. Johnson's name was interjected into this case by the defense when he was named as a potential alibi witness in an answer to a discovery request made by the State. In addition, the jury first heard testimony regarding Johnson from a witness during his cross-examination by defense counsel. See *People v. Davis* (1976), 38 Ill. App. 3d 411, 416-17, 347 N.E.2d 818, 823.

We believe the substance of the prosecutor's remarks to have been within the bounds of the *Munday* rule. Viewed in context, the remarks were fair comment and argument to the jury about Lyndell Johnson's failure to testify.

The second error assigned by the defendant concerns remarks made during the prosecutor's closing argument about the defendant's failure to assert certain specifics of an alibi at the time of his arrest. During cross-examination, the prosecutor asked the defendant whether he had made a statement to the police concerning the offense, whether he had been read his *Miranda* rights before he gave the statement, and whether he had knowingly and intelligently waived those rights. Following the defendant's affirmative response to those questions, he was examined as follows:

"Q. And he [the arresting officer] questioned you about what happened the day before at the Bilbruck residence?

A. Yes, he did.

Q. And you told him you didn't know anything about it?

A. Yes, sir.

Q. And you knew what time he was talking about, didn't you? About 12:30 to 1:00.

A. If he indicated it I would.

Q. And you knew you couldn't possibly be the man because you were there working with Red Medford, right?

A. That is right.

Q. Did you tell him that?

A. I don't recall.

Q. You didn't tell him that did you?

A. I don't know.

\* \* \*

Q. All right. You were asked about the events the day before at Bilbruck's?

A. Yes, sir.

Q. And you were asked about going to lunch?

A. Yes, sir.

Q. And you were asked about when you got back from lunch?

A. I guess I was.

Q. And you didn't make any statement concerning who it was you were with who could give you an alibi?"

The verbatim contents of the oral statement made by the defendant to the arresting officer were never given to the jury; however, a synopsis of the statement appears in a police officer's report which is a part of the record before us. In it are the defendant's answers to the officer's questions about the defendant's midday activities.

During closing argument the prosecutor referred to the defendant's failure to mention the specifics of his alibi in his statement to the arresting officer:

"Prosecutor: But there is a problem with that and that is the fact that Hinson gave a statement to the police and when he talked to the police and he was told what happened he didn't say 'Hey, wait a minute, I've got an alibi. This man here was with me * * *.'

Counsel for defense: We are going to object to that, Your Honor, because he has no duty to tell the cops anything. You sustained that objection to that part of it. He had no duty to tell them anything.

Prosecutor: Your Honor, I have case law to the point that this is proper argument.

The Court: Well, I sustained it during the trial. The fact that he didn't may be commented upon but the alibi part I would sustain.

Prosecutor: The fact that he didn't?

The Court: You can argue that.

Prosecutor: Well, that's argument. Here he is. He is arrested. They say 'Did you beat this guy up between 12:30 and 1:00 on the 14th?' He just denies it. He doesn't say, 'Wait Lyndell Johnson drove me back. Red Medford was with me.' "

The defendant claims that this amounts to improper impeachment and argument and constitutes reversible error. He argues that the court erred by failing to rule on the admissibility of the statement made by defendant as mandated by *Miranda v. Arizona* (1966), 348 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and by permitting impeachment of the defendant by his silence after *Miranda* warnings as prohibited by *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

We find no error in the trial court's failure to rule on the admissibility of the defendant's statement to the arresting officer. First, the contents of the statement were never offered into evidence; second, the court was never asked to make such a ruling; and third, there was testimony by the defendant that *Miranda* warnings were given and waived by him. No objection was raised at trial regarding the defendant's competency to answer questions regarding the waiver.

Furthermore, we find the prosecutor's questions and remarks regarding defendant's failure to tell the arresting officer about being driven back to work by Lyndell Johnson and about immediately resuming work with Red Medford between 12:30 and 12:45 p.m. to have been proper impeachment of a witness and proper argument based on that impeachment.

■■ In *Doyle* the court stated the issue before it, and its conclusion, as follows:

"The question * * * is whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have

told the story after receiving *Miranda* warnings at the time of his arrest. We conclude that use of the defendant's post-arrest *silence* in this manner violates due process \* \* \*." (Emphasis added.) (426 U.S. 610, 611, 49 L. Ed 2d 91, 94, 96 S. Ct. 2240, 2241).

The defendant in *Doyle* was silent. He gave no statement except a general denial. The defendant here, however, was not silent. He answered questions about his midday activities. We believe the partial alibi given upon arrest and the exculpatory statement given at trial resulted in a manifest inconsistency which the prosecution had a right to call to the attention of the jury. We note, further, a recent decision by our supreme court that a "prosecutor's reference to silence in the context of proper impeachment by inconsistent statements was not a *Doyle* violation." (*People v. Rehbein* (1978), 74 Ill. 2d 435, 443, 386 N.E.2d 39, 42-43.) We also note *People v. Henson* (4th Dist. 1978), 58 Ill. App. 3d 42, 45, 363 N.E.2d 852, 854, where the court said:

"We do not believe that the *Doyle* court intended to lay down a blanket prohibition on silence of every variety. It prohibits comment or cross-examination on refusal to make any statement except a general denial, but does not go so far as to say that the prosecutor is barred from comment on a partial statement. 'Silence' is one of those absolute words like 'unique' which admit of no degrees."

Here Hinson made a lengthy statement, he was not silent nor merely making a passing remark. The court's permitting the prosecutor to question about and make legitimate comment upon the obvious omissions in the first statement and the failure of the defendant to give a complete statement to the arresting officer was proper and consistent with *Doyle v. Ohio*. See *People v. Beller* (5th Dist. 1977), 54 Ill. App. 3d 1053, 370 N.E.2d 575, *aff'd* (1979), 74 Ill. 2d 514, 386 N.E.2d 857; *United States v. Mireles* (5th Cir. 1978), 570 F.2d 1287.

The defendant raises as a third error the court's instruction on accountability. He argues that the evidence attributed only one course of action to him—entering upon Bilbruck's property, striking the victim once, thus knocking him off the backhoe, and then running behind the backhoe where he could not be seen by the witnesses. This, says the defendant, does not constitute aggravated battery. The evidence further showed that an indefinite number of unknown, undescribed, and unidentified men were with the defendant. The evidence does not show with particularity what kind of blows were dealt the victim or who delivered those blows. Defendant argues that this evidence is insufficient to establish participation by anyone other than defendant.

The most specific testimony regarding the occurrence was provided by eyewitness Ford as follows:

"The men came through the gate, * * * and one man walked up to me and asked me if I was Mr. Bramlet. I said no. He asked Mr. Bilbruck, who was the home owner, if he was Mr. Bramlet and he said no.

* * *

* * * The rest of the men that came in were all just moving around in the area. And this one man came up to me and he again asked me if I was Bramlet. I said no. He asked if I was a laborer and I said yes. He told me you stay out of this. I said, 'Well, what is going on?' He said, 'Just stay out of this.' Then another man walked over to the tractor and started to climb up on the tractor and as he started to get up he slipped. He got up again. Mr. Bramlet * * * was turning around pulling the lever to turn it off and this man struck him either once or twice, and he fell off the north side of the tractor to the ground. Then I yelled at them, you know, 'What's going on' and 'Lets stop it' and two guys jumped in front of me and said 'stay out of this.'

* * *

Okay, after he hit him and he fell off he ran around the tractor to the other side and two or three men.

* * *

* * * He ran around the tractor and another man did or it may have been two and they were either hitting him or kicking him. I couldn't see because he had fell off the tractor where I couldn't see him but I could hear him. I could hear him in pain. * * *"

▬ This evidence discloses that a group of men entered upon the property looking for the victim, Clinton Bramlet. When he was located by the group, one of them, identified as the defendant, mounted the backhoe on which Bramlet was seated, and delivered a blow to Bramlet which caused him to fall off the machine. Several of the men, including the defendant, then ran behind the backhoe where Bramlet had fallen. Bramlet then uttered sounds which an eyewitness described as sounds of pain. The record also shows that the victim suffered some four fractures and required hospitalization as a result of this event. From this the fact-finder could conclude that great bodily harm was done to the victim on this occasion either by the defendant alone while others watched or by the defendant along with others who participated. We find the proof here ample to support the defendant's guilt on the theory of accountability, thus rendering an instruction on that theory entirely proper.

In *People v. Williams* (1968), 104 Ill. App. 2d 329, 244 N.E.2d 347, the evidence consisted of the victim's testimony that he was attacked by three boys whom he was unable to identify because his face was covered with blood. There was no evidence as to which of the three boys actually

committed the physical contact with the victim; however, a neighbor testified that she was awakened by the victim's screams, that she saw three men come out of the victim's apartment, and that she recognized one of the three as the defendant. The court affirmed the conviction, finding the proof ample to establish that the defendant was either the principal or an accomplice.

■ The defendant further complains that the court's instruction on accountability was not a part of the court's issues instruction. *People v. Hatfield* (1972), 5 Ill. App. 3d 996, 284 N.E.2d 708, cited by the defendant, while suggesting that IPI Criminal No. 5.03 should not be submitted to a jury without an accompanying issues instruction, held that the trial court's failure to do so was harmless error. In any event, in the instant case the objection was waived by the defendant's failure to raise the objection at trial.

The defendant's fourth complaint concerns restrictions put upon his cross-examination of two of the State's witnesses, Bramlet and Ford, about the bias both witnesses may have had against the pipefitters union with which the defendant was affiliated and the activities of these two witnesses some few hours prior to the offense. It was the contention of the defendant that those activities amounted to violations of the Illinois Plumbing Code and that the witnesses may have been expecting leniency with respect to those violations if they testified favorably for the State.

■■■ The court properly exercised its discretion in restricting the scope of cross-examination on both matters. Such rulings are not to be disturbed on appeal absent a showing of abuse. (*People v. Peter* (1973), 55 Ill. 2d 443, 451-52, 303 N.E.2d 398, 404.) The court required defense counsel first to ask the witnesses whether they had known that Hinson was a pipefitter before identifying him as an assailant. When both stated they did not know Hinson's occupation prior to or at the time they identified him as one of the assailants, the court curtailed further questions regarding the witnesses' hostility toward the pipefitters. It seems basic that in order to impeach an identification on the basis of bias against a group to which the identified person belongs, one would have to show, as foundation, that the witness knew the person to be a member of that group prior to the identification. Otherwise the bias is not probative.

■■ The court's restriction of cross-examination as to violations of the Plumbing Code was another exercise of sound judicial discretion. There was in the record nothing to indicate any pending prosecution of such violations. In any event, it seems remote that the jury might be made to believe these witnesses were testifying for the State in hopes of leniency when they were in fact the victim of this serious beating and one of the few eyewitnesses to it.

The defendant's final issue on appeal concerns the court's refusal to permit a hypothetical question to be answered by his expert witness. An expert in the field of the scientific analysis of materials was called by the defense to testify about the comparison of chemical properties of soil. It appears that during the investigation of this case the police had collected soil from the defendant's boots and from the scene of the offense; according to the defense, the State had abandoned this means of linking the defendant to the scene when the defense expert examined the soil samples and posited that the soil samples had been tampered with. Defendant's plan was to bring this matter to the jury's attention, hoping to discredit the police testimony in general.

■ When the defendant sought to bring out the expert's opinion that the soil samples had been tampered with, the State objected to the question on the ground that it was an improper subject for expert opinion. While this expert was qualified to assess and testify about the similarities and differences in these samples of soil and, in fact, did so, we find that he was properly not permitted to answer the hypothetical question because as posed, it asked for conclusions which are within the range of ordinary intelligence and observation. Accordingly, this opinion evidence was not admissible. *People v. Moretti* (1955), 6 Ill. 2d 494, 530, 129 N.E.2d 709, 728.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

KARNS and JONES, JJ., concur.