STATE of Iowa, Appellee,

v.

Charles CULLOR, Appellant.

No. 65898.

Supreme Court of Iowa.

Feb. 17, 1982.

Jerald W. Kinnamon and Richard E. Klausner, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Edward Blando, Asst. Attys. Gen. and Jeffrey C. Corzatt, Tama County Atty., for appellee.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, LARSON, and SCHULTZ, JJ.

ALLBEE, Justice.

Defendant Charles Cullor stands convicted by a jury of the first degree murders of his estranged wife and two other persons. §§ 707.1, .2, The Code 1979. In this appeal from those convictions, he asserts that a

warrantless search and subsequent seizure of his automobile violated the federal and state constitutions. Our review having disclosed no merit in defendant's assertions, we affirm the convictions.

Law enforcement officers conducted three searches of defendant's automobile. The first was made without a warrant and occurred before the officers had received any report of the triple murder. After the police learned of the murder and of the possible connection of defendant's automobile with that crime, the vehicle was seized without a warrant. Searches of the automobile's interior were then conducted pursuant to two search warrants. Those warrants and the searches conducted pursuant to them are not challenged on this appeal.

## I. *Warrantless search of defendant's automobile.*

Defendant first contends trial court erred in overruling his amended motion to suppress evidence obtained as a result of the initial warrantless search of his automobile. Because defendant claims the search violated his constitutional rights, we find the facts de novo. *State v. Dickerson*, 313 N.W.2d 526, 530 (Iowa 1981).

At about 4:05 a.m. on April 6, 1980, a man named Ronald Decorah entered the Tama police station and reported that he believed a burglary might be in progress at Thomas & Co., a Tama business. That business was located in an area where there had recently been a large number of break-ins and other crimes, most occurring during the early morning hours. Decorah told the police that while walking to his mother's apartment he had heard what sounded like an argument, as well as some "banging" noises, in the alley between Thomas & Co. and the Fifth Avenue Apartments. He observed an automobile parked in the alley with a man inside. Decorah twice asked the man if he needed any help. The man said he had blown a fuse; in an angry manner, he declined Decorah's offers of assistance and told him to "get out of there." Suspicious of the man's conduct and demeanor, Decorah made a mental note of the car's license number and wrote it on a matchbook after reaching his mother's apartment. The number written on the matchbook, which he gave to the Tama police shortly thereafter, was EDC 605.

After receiving this information, the officer at the police station radioed a patrol car and told the patrolman to proceed to the alley in question. The officer from the station also drove to the scene with another officer and a special deputy. There they found an unoccupied 1965 maroon Chevrolet car, with license number EDC 605, parked in the alley so as to block a pedestrian walkway.

Standing outside the automobile, one of the officers shone his flashlight on the interior and saw a holster lying between the bucket seats with a section of rope on top of it. From outside the car, he was unable to determine whether there was a gun in the holster. He also observed that the keys were in the ignition. Believing that the driver of the car was likely to return shortly, he felt it was important to determine whether there was a gun in the car or whether the driver would be likely to have it on his person if and when he arrived. He therefore told another officer to open the door and check the holster. The holster was empty. Both officers then entered the car to search for the possible gun in other parts of the passenger compartment. No gun was found. After checking the area around the alley for other signs of criminal activity and finding none, the officers departed.

Less than two hours later, it was learned that a triple murder had occurred early that same morning in the apartment building adjacent to the alley, that defendant's estranged wife was one of the victims, and that defendant was the owner of the car seen in the alley.

The State contends defendant was not prejudiced by the warrantless search of his vehicle because no evidence was seized during that initial search, and because the subsequent searches which did result in seizure of physical evidence could have been made without regard to the earlier search. This argument, however, overlooks the fact that as a result of the initial search, the Tama police officers were able to testify that a green rain parka later found in the car was not there during the first search, and also that no gun was present in the car at that time. Both of those pieces of evidence were important to the State in building its case against defendant. The testimony would have been weaker if the officers were only able to say that they had not been able to view those items from their positions outside the car. Therefore, because defendant was prejudiced by testimony resulting from the search, we will address the legality of the search on its merits.

█ A warrantless search is presumptively unreasonable unless it comes within a recognized exception to the warrant requirement. *State v. Folkens,* 281 N.W.2d 1, 3 (Iowa 1979). Here, the State asserts that the warrantless search of defendant's automobile was justified because both probable cause and exigent circumstances existed. Defendant claims neither of those elements was present.

█ We find that there was probable cause for the search. Items in plain view within a car, viewed by police officers standing outside the car where they have a right to be, can furnish probable cause for a subsequent search of the car. *See State v. Olsen,* 293 N.W.2d 216, 220 (Iowa), *cert. denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980); 2 W. LaFave, *Search and Seizure* § 7.5, at 590–91 (1978). Observation of what would be readily visible in the daylight does not become impermissible merely because a flashlight is used at night. *United States v. Johnson,* 506 F.2d 674, 676 (8th Cir. 1974), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1975). In the present case, officers investigating a report of suspicious activity by the occupant of a certain car parked in a public alley, had a right to be where they were. So positioned, they were able with the aid of a flashlight to see a holster in plain view inside the car, but were unable to see whether it contained a gun. Such an observation provides probable cause to believe the driver of the car has committed the crime of carrying a weapon in a vehicle. *People v. Goodman,* 58 Mich. App. 220, 222–24, 227 N.W.2d 261, 262–63 (1975). Accordingly, the officers here had probable cause to enter defendant's vehicle to search for a gun as evidence of a violation of section 724.4, The Code 1979 (carrying weapons).

We also find that there were exigent circumstances justifying the failure to obtain a warrant. "A parked vehicle presents exigent circumstances when it appears the vehicle will shortly be moved, or when police are aware that others with access to the vehicle are nearby to remove it." W. Ringel, *Searches & Seizures, Arrests and Con-fessions* § 11.3 (1981) (footnotes omitted); *see State v. Holderness,* 301 N.W.2d 733, 737 (Iowa 1981). Here, the owner of the car was at large. He had recently been seen in the vehicle, had left his keys in the ignition, and had parked the car in a place where it would impede pedestrian traffic. These factors in combination strongly suggested that the vehicle would be moved shortly if prompt action were not taken.

Furthermore, in this case there was the added exigency of a danger of violence or injury to the police officers or others. *See State v. Jackson,* 210 N.W.2d 537, 540 (Iowa 1973). Once the officers saw the holster in the car, it became important to determine immediately whether the driver was likely to be armed, particularly in light of the indications that his return was imminent.

█ Defendant points out that the officer who directed the search admitted at the suppression hearing that he could have posted a guard to secure the vehicle while a search warrant was sought. First, we observe that posting a guard would not have eliminated the exigency created by the need to know whether the returning owner of the car would be armed; indeed, such a measure would have heightened the risk of danger to the guard. Furthermore, most courts hold, and we agree, that the police need not respond to the exigency of mobility by posting a guard with the vehicle until a warrant is obtained. *See* Division II, *infra.*

█ Finally, defendant contends that even if there were probable cause and exigent circumstances to justify the warrantless search for a gun, the scope of the search was unreasonable because it went beyond a search of the holster itself. This issue was neither raised in defendant's amended motion to suppress nor ruled upon by trial court; therefore, it cannot be considered on this appeal.

II. *Seizure of defendant's automobile.*

At about 5:30 a.m. on the morning of the events described earlier, one of the Tama police officers who had conducted the war-

rantless search of the maroon Chevrolet in the alley learned that the vehicle was registered to Charles Cullor of St. Anthony, Iowa. Less than half an hour later, the officer received a report of a shooting in the apartment building next to the alley. Earlier, in making his rounds at 5:15 or 5:25 a.m., he had noticed the car still parked in the alley; however, when he again arrived at the scene at about 5:55 a.m. following the shooting report, the car was gone. He then learned that three persons had been shot to death in the apartment building, and that one of them was the estranged wife of Charles Cullor.

At 7:20 a.m. defendant telephoned the Tama police and stated that he had heard about a triple homicide at his wife's apartment. He said he was at his parents' home in St. Anthony, and it was arranged that Tama County deputy sheriff Bruce Bolin would meet him outside the home for questioning. When Bolin and two other officers arrived at the Cullor residence at about 8 a.m., they saw the maroon Chevrolet with license number EDC 605 parked in the driveway. Bolin, acting without a warrant, directed that the vehicle be impounded as evidence for security reasons. Before the car was actually towed away, Bolin searched Cullor's person and obtained a set of keys to the vehicle. Although defendant voluntarily went with the officers to the Tama police station for questioning, he was not placed under arrest at that time. At the suppression hearing, Bolin testified that he knew other people were inside the Cullor residence, and that he did not know whether they might possess a spare set of keys to the vehicle.

Although the automobile was towed away without a warrant, no search of its interior was made until after a valid warrant was obtained. Several items, including a green rain parka which became a key piece of evidence, were seized in the two searches made pursuant to warrants. Defendant's amended motion to suppress asked trial court to exclude all evidence obtained as a result of the warrantless seizure of his car, alleging that the seizure came within no exception to the warrant requirement. Trial court denied the motion, and defendant asserts this was error.

■ The State first notes that because defendant's car had earlier been seen near the scene of the murders, the automobile itself was evidence linking defendant to the crime; thus, the State argues, because the car was parked in open view, it was seizable without a warrant under the "plain view" doctrine. *See State v. Dickerson*, 313 N.W.2d 526, 531–32 (Iowa 1981). We disagree. "[A] nonintrusive plain view establishes only the lawfulness of the observation itself and not the lawfulness of any subsequent intrusion and seizure. . . ." 1 W. La-Fave, *Search and Seizure* § 2.2, at 245 (1978). Thus, the warrantless seizure, if justified at all, must come within some recognized exception to the warrant requirement.

■ The State next contends that the exception permitting a warrantless seizure upon probable cause and exigent circumstances was applicable to the seizure of defendant's car. Given officer Bolin's knowledge that the car, containing an empty holster, had earlier been seen in the vicinity of the murder and that one of the murder victims was the estranged wife of the automobile's owner, Bolin clearly had probable cause to seize the vehicle. The question is whether there were exigent circumstances justifying his failure to obtain a warrant prior to the seizure.

Defendant asserts that officer Bolin should have known he would find the vehicle at defendant's home and that he had an opportunity to obtain a warrant before going there. He cites *Coolidge v. New Hampshire*, 403 U.S. 443, 478, 91 S.Ct. 2022, 2024, 29 L.Ed.2d 564, 590 (1971), for the proposition that a warrantless seizure of an automobile is not justified if the police knew they would find the vehicle where they did, and if they had a clear no-risk opportunity to obtain a warrant in advance. *See* 2 W. LaFave, *supra*, § 7.2, at 519–21. We find nothing in the record here to indicate Bolin knew the automobile would be found at defendant's home; the last time it had been

seen, a few hours earlier, it was in a different town.

Furthermore, even if Bolin should have guessed he would find the car at defendant's home, we do not believe it was necessary under the facts of this case that he delay his planned meeting with the defendant in order to obtain a warrant. First, such delay would have entailed some risk, for defendant was not in custody and could have suddenly decided to take the car and flee. *See United States v. Birmley*, 529 F.2d 103, 106 (6th Cir. 1976); 2 W. LaFave, *supra*, § 7.2, at 521 (even "when the police set out for a particular place to search a vehicle they expect to find there, they need not detour to the magistrate if there is reason to believe that the delay could result in loss of the evidence sought . . . because the defendant is not in custody and may move the vehicle to another unknown location.") (footnotes omitted). In any event, we find the following commentary to be applicable here:

> Sometimes the police may set out for a certain place for a purpose other than that of searching a car, . . . but at the scene a car is found there and searched or else seized and later searched. The defendant will claim, of course, that the police should have been armed with a search warrant in advance. One situation in which that claim quite obviously cannot prevail is when the grounds for issuance of the warrant were not fully developed until after the police were on the scene. . . .
>
> More difficult are those cases in which, had the police reflected on the matter, they would have concluded that they did have probable cause to search a particular vehicle and that this car would likely be at the place they were going for some other purpose. At least where the police were diligent in their investigation of the crime, such an oversight is not viewed as equivalent to the failure to get a warrant in the [*Coolidge*]-type of situation. This is an illustration of the *Cardwell* notion that the police cannot always be faulted for their failure to obtain a search warrant at the earliest possible moment.

2 W. LaFave, *supra*, § 7.2, at 521–22 (footnotes omitted).

The next question is whether exigent circumstances obtained once the officers saw the car at defendant's residence. In the case of an automobile, as noted earlier, the exigency requirement is satisfied when it appears that the vehicle may be moved and the evidence it contains lost if the police do not act immediately. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970); *State v. Holderness*, 301 N.W.2d 733, 737 (Iowa 1981). In the present case, defendant was not under arrest, and there were relatives and other persons inside the house adjacent to the car who likely knew defendant was being questioned as a suspect in the murder. Only one set of keys to the car was accounted for. If the police had not seized the car immediately, it could easily have been driven away or tampered with.

In *Chambers*, the United States Supreme Court observed that when the exigency of mobility is present, "if an effective search is to be made at any time, either the search must be made immediately without a warrant *or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search*." 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428 (emphasis added). The Court stated that while the latter method was arguably preferable, either method was constitutionally permissible. The latter method is precisely the course followed by the police in this case.

Defendant, however, suggests that a third course was available to the police: posting a guard to watch the car until a warrant was obtained. Most courts "take the position that the police need not respond to the exigent circumstances by posting a guard where the vehicle is found." 2 W. LaFave, *supra*, § 7.2, at 529; *e.g., United States v. Frick*, 490 F.2d 666, 670 (5th Cir. 1973), *cert. denied sub nom. Peterson v. United States*, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974); *United States v. Evans*, 481 F.2d 990, 993 (9th Cir. 1973); *United*

*States v. Bozada,* 473 F.2d 389, 391 (8th Cir.), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973); *Redd v. State,* 240 Ga. 753, 754, 243 S.E.2d 16, 18 (1978); *People v. Peter,* 55 Ill.2d 443, 456, 303 N.E.2d 398, 406 (1973), *cert. denied,* 417 U.S. 920, 94 S.Ct. 2627, 41 L.Ed.2d 225 (1974); *State v. Lail,* 41 N.C.App. 178, 181, 254 S.E.2d 201, 203 (1979); *State v. Bell,* 62 Wis.2d 534, 543, 215 N.W.2d 535, 540 (1974). LaFave observes that while a mere stake-out of a car probably would not constitute a "seizure," "guarding the car would be *effective* only if the police could deny use or access to anyone who approached the car." 2 W. LaFave, *supra,* § 7.2, at 529 (emphasis added). Such a denial of use or access would constitute a "seizure." *Peter,* 55 Ill.2d at 456, 303 N.E.2d at 406. In light of *Chambers,* we see no constitutional difference between a seizure on the premises and one which involves removal of the vehicle from the premises.

Trial court did not err in overruling defendant's amended motion to suppress on any of the grounds properly preserved by defendant. Accordingly, defendant's convictions are affirmed.

AFFIRMED.