# IN THE COURT OF APPEALS OF IOWA

No. 16-1424
Filed May 17, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIFFANI A. TAYLOR,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Sioux County, Robert J. Dull, District Associate Judge.

        Tiffani Taylor appeals her conviction for possession of methamphetamine contending the district court erred in denying her motion to suppress. **AFFIRMED.**

        Robert B. Brock II of Law Office of Robert B. Brock II, P.C., Le Mars, for appellant.

        Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Tiffani Taylor appeals her conviction for possession of methamphetamine. She claims the district court erred in denying her motion to suppress. Upon our review, we conclude the district court properly denied the motion to suppress because the "plain view" exception applied to the warrantless search of Taylor's purse. Accordingly, we affirm Taylor's conviction and sentence.

**I. Background Facts and Proceedings.**

On August 15, 2015, Michelle Bellis and Tiffani Taylor visited an inmate at the Sioux County Jail. Both women provided identification as a part of the check-in procedure. A correctional officer determined neither had a valid license to drive. Since the women had arrived at the jail in a van driven by one of them, the officer notified Sioux County Deputy Sheriff Oostra of the situation. The deputy parked near the jail and laid in wait. When the women left the jail, the correctional officer observed Bellis driving the van and notified Deputy Oostra. The deputy stopped the van after it drove past his lair. After confirming that Bellis was driving without a valid license, the deputy had Bellis get out of the van, and she and the deputy headed toward the patrol car. The deputy asked if anyone else in the van had a valid license. Bellis said Taylor had a license and could drive. The deputy returned to the van, and from the still open driver's window, he asked Taylor, who was sitting in the front passenger seat, if she had a valid driver's license. According to Deputy Oostra's report attached to the minutes of testimony, the following transpired:

> [Taylor] told me she did. I asked to see it and she reached for a
> purse located by her left foot that was [sitting] on the floor.

> [Taylor] retrieved from that purse a smaller purse, it appeared as a small, mostly tan in color 3x5 inch makeup purse. She unzipped it and opened it. I could see into the purse and saw a card of some sort and a small blue baggie that appeared to have a white colored substance in it; possibly a controlled substance. [Taylor] quickly handed me an Iowa identification card and closed the purse zipping it shut. I told her this was only an identification card and not good for driving. I then confronted her with what I knew; she did not have a driver's license. [Taylor] acknowledges she did not have one.
>
> I then asked about the small baggie I saw in the purse which she retrieved her identification card from. [Taylor] then opened the purse again and held it so I could not see in. I asked what was in the baggie. [Taylor] just held the purse bouncing it in her hand in what appeared to be an attempt to cover the baggie with the other contents of the small purse. I then told [Taylor] to hand me the purse. She did and I reached in and took out the small ¾ inch by 1 ½ inch blue baggie.

The deputy then took the small makeup purse with him and had Taylor stay in the van while he finished writing the traffic citation for Bellis in the patrol car. He went back to the van, searched Taylor's large purse and the van's passenger compartment area near where Taylor was sitting. Asked what testing the white powder might reveal the powder to be, Taylor responded, "it may test for meth." Taylor was read her *Miranda* rights, taken to jail, and arrested.

By trial information, the State charged Taylor with possession of methamphetamine, first offense, in violation of Iowa Code section 124.401(5) (2015), a serious misdemeanor. Taylor filed a motion to suppress all evidence recovered by the State, contending the evidence was obtained in violation of her rights under the Fourth Amendment and article I section 8 of the Iowa Constitution. The State resisted, and a hearing was held.

Thereafter, the district court denied Taylor's motion, concluding:

> Deputy Oostra observed the baggy and its contents in the purse when he asked [Taylor] for her driver's license, which she

had told him she had. She opened the purse and the baggy was in plain view, at which time Deputy Oostra immediately believed it to contain a controlled substance. Under these facts, the court concludes Deputy Oostra was legally entitled to take possession of the baggy pursuant to the plain view exception. *See State v. McGrane*, 733 N.W.2d 671, 680 (Iowa 2007).

Taylor waived her right to a jury trial, and the matter was tried to the court. The court found Taylor guilty as charged. Judgment was entered, and Taylor was sentenced.

Taylor now appeals. She contends the district court erred in denying her motion to suppress. Specifically, she argues the court should have found that the warrantless search of her possessions was in violation of the United States and Iowa Constitutions.

**II. Standards and Scope of Review.**

Because Taylor asserts the district court violated her constitutional rights in denying her motion to suppress, we review her claim de novo. *See State v. Coleman*, 890 N.W.2d 284, 286 (Iowa 2017). "We independently evaluate the totality of the circumstances found in the record, including the evidence introduced at both the suppression hearing and at trial." *State v. Gaskins*, 866 N.W.2d 1, 5 (Iowa 2015) (citation omitted). We are not bound by the district court's credibility determinations, but we can give them deference. *See State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001).

**III. Discussion.**

Taylor asserts the warrantless seizure and search of her makeup purse violated her constitutional rights under the Fourth Amendment of the United States Constitution and under article I, section 8 of the Iowa Constitution. She

does not argue that we should evaluate her claims differently under the two constitutional provisions. The United States Constitution and the Iowa Constitution both grant protections against unreasonable searches and seizures. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. "We follow an independent approach in the application of our state constitution. However, when a party does not argue an independent approach, 'we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent.'" *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) (quoting *State v. Tyler*, 830 N.W.2d 288, 291-92 (Iowa 2013)).

"Searches conducted without a warrant are per se unreasonable, 'subject only to a few specifically established and well-delineated exceptions.'" *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Iowa law recognizes exceptions to the warrant requirement for "searches based on consent, plain view, probable cause coupled with exigent circumstances, searches incident to arrest, and those based on the emergency aid exception." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). The State has the burden of proving by a preponderance of the evidence that an exception to the warrant requirement applies. *See State v. Simmons*, 714 N.W.2d 264, 272 (Iowa 2006). If the State fails to meet its burden, evidence obtained in violation of the warrant requirement is inadmissible. *See State v. Crawford*, 659 N.W.2d 537, 541 (Iowa 2003).

If "'the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband,'" probable cause to search the vehicle exists. *State v. Edgington*, 487 N.W.2d 675, 678 (Iowa 1992) (quoting

*United States v. Strickland*, 902 F.2d 937, 942-43 (11th Cir. 1990)). "The facts and circumstances upon which a finding of probable cause is based include 'the sum total . . . and the synthesis of what the police have heard, what they know, and what they observe as trained officers.'" *Id.* "[P]robable cause need not rise to the level of proof required for conviction, or even indictment, [but] it requires 'more than bare suspicion.'" *State v. Horton*, 625 N.W.2d 362, 365 (Iowa 2001) (citation omitted). In considering whether Deputy Oostra had probable cause to seize and search Taylor's makeup pouch, we conduct "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Maddox*, 670 N.W.2d 168, 171 (Iowa 2003) (quoting *Crawford*, 659 N.W.2d at 541).

There is no dispute the deputy would have had sufficient probable cause to seize and search Taylor's makeup purse upon observation of evidence of drugs within the purse. *See, e.g.*, *State v. Cullor*, 315 N.W.2d 808, 811 (Iowa 1982) ("Items in plain view within a car, viewed by police officers standing outside the car where they have a right to be, can furnish probable cause for a subsequent search of the car."); *see also State v. Eubanks*, 355 N.W.2d 57, 60 (Iowa 1984) ("Once the patrolman lawfully stopped the car and had probable cause to search for contraband, all containers within the car when it was stopped were fair game for the car search. [Eubanks] had no right to insulate her purse or any other container from a lawful warrantless search by the simple expedient of physically removing the purse and its contents from the car while the search was in progress.").

Taylor does not argue the traffic stop was invalid, the deputy was not in a place he had a right to be, or the seized baggie was not in plain view to the deputy. Rather, Taylor argues the plain view exception to the warrant requirement is not applicable here because the incriminating nature of the baggie was not known or immediately apparent to the officer when he observed it. Taylor asserts the incriminating nature of the baggie was not known to the deputy and that "[t]he ultimate seizure of the property, the subsequent statements of [Taylor], and finally the lab test results of the baggies, cannot retroactively create reasonable grounds for the [deputy] to believe that the layered, non-transparent, object that he glimpsed momentarily were in fact contraband."

The State had the burden of proving the seized baggie's "'incriminating character' was 'immediately apparent.'" *McGrane*, 733 N.W.2d at 680 (citations omitted). At the suppression hearing, the deputy testified on direct examination:

> Q. And where was that identification card? A. It was in a small makeup-sized case that was in her purse.
> Q. Did she take this purse out? A. Yes, she did.
> Q. Did you see anything in the purse? A. Yes. When she was opening this makeup case she opened it right where I could look into it, she took out her ID card. While looking into it I could see a small container used to hold illegal substances quite often.
> Q. Could you describe that small container. A. It was a small three-quarters by inch and three-quarters or so sized little baggie.
> . . . .
> Q. And you observed that on—from—without holding the purse? A. No, she was holding the purse, zipped it open in this fashion, was trying to get her ID card out. There was numerous other papers, other documents. This baggie was sitting right on top (gesturing).
> Q. In your past training and experience as a law enforcement officer what are those baggies typically used for? A. Generally these baggies are used for holding illegal substances, methamphetamine, cocaine.
> Q. Is that what you perceived them to be containing that day? A. Yes.

Plastic baggies are commonly used as a container for narcotics and are known for their use in the drug trade. *See State v. Carter*, 696 N.W.2d 31, 38 (Iowa 2005). Deputy Oostra had previously seen other individuals package narcotics in small baggies like the one he observed in Taylor's makeup purse. This was not a garden variety sandwich-sized baggie. An officer's training and experience may be taken into account when determining whether the incriminating nature of the evidence was readily apparent to the officer. *See id.* at 37. The deputy could also take into account Taylor's furtive actions in trying to hide the baggie. After he asked Taylor what was in the baggie, Taylor

> then reached down, got her purse back out that was containing this little blue baggie. She opened it up again so I could not see it and started jiggling it in her hand as though to probably try to cover what I had seen. I then . . . told her to give me the bag and she did.

There is no requirement that the State prove Deputy Oostra "knew" the baggie contained illicit drugs before seizing it. The State only needed to prove Deputy Oostra reasonably believed the baggie contained illicit drugs. Based on the totality of the circumstances, we believe the State satisfactorily proved that the baggie's incriminating nature was immediately apparent to Deputy Oostra. Therefore, the deputy's seizure and search fell within the plain view exception and was valid under both constitutions.

**IV. Conclusion.**

Because we conclude the search of Taylor's purse fell within the plain view exception to the warrant requirement, we affirm the district court's ruling and Taylor's conviction.

**AFFIRMED.**