# IN THE COURT OF APPEALS OF IOWA

No. 19-1241
Filed August 19, 2020

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**SHAWN THOMAS BEAN,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


　　A defendant challenges a district court's denial of his motion to suppress evidence following convictions for drug-related offenses. **AFFIRMED.**


　　Jonathan M. Causey of Causey & Ye Law, P.L.L.C., Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.


　　Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

Shawn Thomas Bean appeals from drug-related convictions, alleging the district court erred in denying his motion to suppress evidence from a vehicle search. We conclude the evidence was admissible under an exception to the warrant requirement, and therefore the district court's denial of the motion was not erroneous.

**Facts and Procedural history**

On October 14, 2018, at approximately 11:32 p.m., Officer Andrew Hofbauer was conducting surveillance of a hotel parking lot in West Des Moines. He parked his police cruiser. After activating his body camera, he exited the police cruiser and approached a parked vehicle from the direction of the rear passenger corner. The defendant, Bean, was seated in the driver's seat. Amanda Meyer was seated in the front passenger seat of the vehicle. The vehicle[1] was legally parked with its lights on and engine running.

As he approached the vehicle, Officer Hofbauer said, "How you guys doing tonight? Police Department." While approaching the vehicle, the officer shined his flashlight at and inside the vehicle. At that time, the vehicle's lights turned off, and Bean exited, coming around the rear to meet Officer Hofbauer near the rear passenger-side corner. Officer Hofbauer testified that prior to his exit, Bean made a movement consistent with hiding something near the pillar of the driver door.

Officer Hofbauer struck up a conversation with Bean and asked him for identification. Bean responded that his name was Justin Meyer and provided an

---

[1] Meyer is one of two registered owners of the vehicle. Bean is not a registered owner of the vehicle.

inaccurate birthdate. Officer Hofbauer sought to verify this information by radioing it in. Officer Hofbauer asked Bean, "Is it okay to pat you down? No weapons? Nothing like that, right?" Bean claimed he had none and responded by raising his arms. Officer Hofbauer then patted Bean down and found no weapons. When Bean inquired why he was being checked on, Officer Hofbauer named the hotel, implying it was a site of frequent criminal activity. The officer also added, "Obviously, I'm not thinking you guys are out here doing that. I'm just checking on you."

Another officer arrived to the scene, and Officer Hofbauer received a radio response that the identifying information Bean provided matched no results. Officer Hofbauer then walked around to the driver's side of the vehicle and used his flashlight to illuminate its interior. Officer Hofbauer leaned in close to the driver's side door and shined his flashlight downward into the vehicle. He noticed a plastic bag containing a white powdery substance, whereupon he returned to the car's other side to arrest Bean. Bean had a digital scale and $588 cash on his person. Officer Hofbauer then executed a search of the vehicle, which revealed an identification card bearing Bean's identity. Plastic baggies, a glass pipe, a lighter, and over sixteen grams of methamphetamine were also found in the vehicle. Bean also had an active warrant for a parole violation.

The State charged Bean with possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(b)(7) (2018), a class "B" felony, as a habitual offender, and with failure to possess a tax stamp, in violation of Iowa Code sections 453B.3 and 453B.12, a class "D" felony. Bean pleaded not guilty by written arraignment on November 27, 2018. He then filed

pro se motions, including a motion to suppress on January 3, 2019, and an amended motion to suppress on January 11, 2019, requesting the evidence found during Officer Hofbauer's search of the vehicle be suppressed. Trial counsel also filed an amended motion to suppress.

A hearing was held on the amended motion to suppress, and the court denied the motion. The State amended the trial information to seek a sentencing enhancement under Iowa Code chapter 124 for possession of a controlled substance, third offense. At the conclusion of a two-day trial in May 2019, the jury found Bean guilty of possession of a controlled substance and failure to possess a tax stamp.

Bean was sentenced to fifteen years on each count as a habitual offender with a mandatory minimum of three years. The sentences were ordered to run concurrently, although the sentences would run consecutive to Bean's parole violation. Bean now appeals, arguing the trial court's denial of his motion to suppress was erroneous.

**Standard of Review**

"Our review of challenges to a ruling on the merits of a motion to suppress is de novo because such claims implicate constitutional issues." *State v. Baker*, 925 N.W. 602, 609 (Iowa 2019). We evaluate the totality of the circumstances, giving deference to but not being bound by the district court's findings of fact. *Id.* Where, as here, a defendant makes no argument that the Iowa Constitution should be interpreted differently than the United States Constitution, we assume the two "should be interpreted in an identical fashion." *State v. Wilkes*, 756 N.W.2d 838, 842 n.1 (Iowa 2008).

**Discussion**

Bean argues Hofbauer seized him without reasonable suspicion. He argues because he was unconstitutionally seized without reasonable suspicion, the evidence found in his car was fruit of the poisonous tree. He asserts that the plain-view exception is inapplicable because Hofbauer "lacked reasonable suspicion that Bean was committing or had committed a crime," citing *State v. McCoy*, 692 N.W.2d 6, 23 (Iowa 2005), in which our supreme court said, "evidence discovered indirectly through the use of evidence or information gained in [an] unlawful detention" is barred under the exclusionary rule.

The State responds that Bean and Hofbauer's interaction was consensual and not coercive, or, in the alternative, that any seizure was supported by reasonable suspicion. The State further argues that "[t]he plain view search of the vehicle was conducted independently of any seizure." The State acknowledges that if the drugs and contraband were "only in plain view as a direct result of an unlawful seizure, then the subsequent plain view search may be a 'fruit' of the seizure and subject to suppression," *see United States v. Davis*, 94 F.3d 1465, 1469–70 (10th Cir. 1996), but argues that if there was a seizure , it occurred after Bean left the methamphetamine in plain view. We agree with the State's position in significant part.

"A search conducted without a valid search warrant is per se unreasonable unless one of the well-known exceptions to the warrant requirement applies." *State v. McGrane*, 733 N.W.2d 671, 676 (Iowa 2007). The State has the burden of proving such an exception applies by a preponderance of the evidence. *State v. Pettijohn*, 899 N.W.2d 1, 14 (Iowa 2017). However, an officer's discovery of an

item may not always arise from a search, within the meaning of constitutional protections:

> [P]olice may perceive an object while executing a search warrant, or they may come across an item while acting pursuant to some exception to the warrant clause . . . . Alternatively, police may need no justification under the Fourth Amendment for their access to an item, such as when property is left in a public place . . . .

*Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983) (citations omitted).

We conclude Officer Hofbauer's discovery of the methamphetamine did not occur as a result of a search, within the meaning of constitutional protections. "Whether a police officer has commenced a 'search' turns not on his subjective intent to conduct a search and seizure, but rather whether he has in fact invaded an area which the defendant harbors a reasonable expectation of privacy." *United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984).

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). "Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window . . . of a vehicle so long as he or she has a right to be in close proximity to the vehicle." *United States v. Bynum,* 508 F.3d 1134, 1137 (8th Cir. 2007); *see also United States v. Brown*, 653 F.3d 656, 661 (8th Cir. 2011) ("[L]ooking through a parked car's windows is not a search for Fourth Amendment purposes."); *United States v. Gooch*, 499 F.3d 596, 600 (6th Cir. 2007) ("[I]f Gooch did not have a reasonable expectation of privacy where he parked his vehicle, then the observation of any contraband in plain view did not constitute a search." (citing *Horton v. California*, 496 U.S. 128, 135 (1990)); *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981) ("The officer, like any other citizen,

had a right to look into the car."); Wayne R. LaFave, 3 Search & Seizure § 7.5(a) (5th ed.) ("[I]f the vehicle is parked on a public street or parking lot, then there is no doubt but that the officer may stand by and look into the vehicle just as any member of the public might."). A hotel guest has no reasonable expectation of privacy in a hotel's parking lot. *United States v. Washburn,* 383 F.3d 638, 641–42 (7th Cir. 2004); *United States v. Diaz,* 25 F.3d 392, 396–97 (6th Cir. 1994); *United States v. Ludwig,* 10 F.3d 1523, 1526–27 (10th Cir. 1993); *United States v. Foxworth,* 8 F.3d 540, 545 (7th Cir. 1993); *see also United States v. Holleman*, 743 F.3d 1152, 1158–59 (8th Cir. 2014) (declining to address the issue but acknowledging *Washburn*, *Diaz*, *Ludwig*, and *Foxworth*).

Here, Officer Hofbauer was standing in a hotel parking lot peering into a car with the aid of a flashlight. He saw the contraband from a vantage point where he was lawfully present and where Bean had no reasonable expectation of privacy. Thus, Hofbauer did not execute a search when he merely looked into Bean's car through a window. *See Harlan*, 301 N.W.2d at 720; *Bynum*, 508 F.3d at 1137. His observation of the contraband did not implicate Bean's rights under the Fourth Amendment or article one, section eight, of the Iowa Constitution.

We also conclude an exception applies to Officer Hofbauer's search of the vehicle. Here, we conclude the "plain-view" exception applies.

> Items in plain view within a car, viewed by police officers standing outside the car where they have a right to be, can furnish probable cause for a subsequent search of the car. Observation of what would be readily visible in the daylight does not become impermissible merely because a flashlight is used at night.

*State v. Cullor*, 315 N.W.2d 808, 812 (Iowa 1982) (citations omitted); *see also Carroll v. United States*, 267 U.S. 132, 149 (1925) ("[I]f the search and seizure

without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."). If an officer has a right to be present in a given location and observes contraband inside a parked car with the aid of flashlight, the officer's "observation provides probable cause," and the officer may enter the defendant's vehicle to conduct a search. *Cullor*, 315 N.W.2d at 811. Officer Hofbauer was permitted to enter Bean's vehicle to conduct a search following the observation of contraband inside. *See id.*

As Officer Hofbauer approached the vehicle on foot and identified himself, Bean exited the vehicle. Officer Hofbauer did not stop or block in the vehicle; Bean and Meyer had simply been sitting in the car while it was stationary in a parking space. Following Officer Hofbauer's observation of a white powdery substance on the driver's side of the car's interior, he had probable cause to arrest Bean.

Having concluded that Officer Hofbauer's search and seizure of the vehicle's interior was valid under the plain-view, we next consider whether the search and seizure were nonetheless violative of Bean's rights under the doctrine of "fruit of the poisonous tree." "Under the doctrine, the 'fruits' of the prior illegality are excluded if they were an exploitation of that prior illegality. Thus, the doctrine operates as an extension of the exclusionary rule." *State v. Lane*, 726 N.W.2d 371, 380 (Iowa 2007).

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to

listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means." *Id.* Although, "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (internal quotation marks omitted).

We find the encounter began as a consensual encounter. Where evidence "has been discovered by means wholly independent of any constitutional violation," such evidence may be admitted under the independent source doctrine. *Nix v. Williams*, 467 U.S. 431, 443 (1984). Even if we found the interaction here transformed at some point into a seizure, we would conclude under the independent source doctrine that the evidence resulting from Officer Hofbauer's search of the vehicle interior was properly admitted.

Officer Hofbauer greeted Bean and Meyer while identifying himself but did not ask that they turn the car off nor did he make any statement indicating they were not free to leave. Bean's vehicle was not in motion at any point during the interaction, and Officer Hofbauer's patrol vehicle was parked far enough away to dispel any notion he had blocked the car in. It was Bean who exited his vehicle from the driver's seat and came around to the rear passenger-side corner to greet Officer Hofbauer, unprompted. By this time, the contraband was in the location where Officer Hofbauer would later locate it by looking into the driver's door

window, and the interaction up to when Bean walked around the vehicle can be characterized as a fully consensual encounter. Therefore, even if at some point Officer Hofbauer's interaction with Bean converted into a seizure, his discovery of the contraband was not the fruit of such seizure but was instead the result of his visual scanning of the car.[2]  *See State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981)

---

[2] Moreover, we are skeptical Officer Hofbauer exceeded the parameters of *Drayton*.  "Whether a 'seizure' occurred is determined by the totality of the circumstances."  *State v. Wilkes*, 756 N.W.2d 838, 842 (Iowa 2008) (citing *Drayton*, 536 U.S. at 207).  "Factors that might suggest a seizure 'include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"  *Id.* at 842–43 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)).

Bean points out a number of details of the interaction in support of his argument that the interaction was coercive such that a reasonable person would not feel free to leave: it was around midnight, Officer Hofbauer was uniformed and armed, he approached from behind the vehicle, he shouted "police department!", he shined his flashlight at and into the vehicle, he patted down Bean for weapons, he explained he had run the plates of the vehicle, he offered his opinion that the hotel was the site of frequent crimes, and a second officer arrived.

We do not find the time of day, Officer Hofbauer's use of a flashlight, or Officer Hofbauer's self-identification as a member of the police to be coercive.  *See United States v. Hayden*, 759 F.3d 842, 847 (8th Cir. 2014) (holding an initial interaction involving self-identification as police and flashlight use to be consensual).  Neither do we find the arrival of a second police officer to be particularly coercive here.  Although a second officer arrived on scene shortly after Officer Hofbauer initiated contact with Bean and Meyer, he "did not use physical force or show authority in any manner."  *See Wilkes*, 756 N.W.2d at 844 (finding an absence of force or show of authority to be indicative of an absence of coercion).  The squad car's headlights, spotlight, siren, and flashing lights were off.  We also, based on our independent review of the video, do not agree with Bean's characterization that the officer shouted at the defendant on initial contact.

We also do not find Officer Hofbauer's remarks regarding the location's crime rate to be coercive.  We acknowledge that, as a matter of law, a person's presence in a high-crime area is alone insufficient to give rise to reasonable suspicion that the person is engaged in criminal activity.  *Brown v. Texas*, 443 U.S. 47, 52 (1979) ("The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct.").  However, Officer Hofbauer's comment does not transform the consensual encounter into a seizure.  He explained that the area's

("The officer, like any other citizen, had a right to look into the car."). Thus, we need not consider whether the interaction became a seizure at some point after Bean exited the car, as the source of the probable cause leading to Bean's arrest was discovered through untainted means and was therefore admissible.

**Conclusion**

We conclude the trial court did not err in denying the motion to suppress. The evidence was admissible under the plain-view exception as it applies to automobile searches. Even if we found that a seizure occurred because Officer Hofbauer's actions were coercive or amounted to a seizure, we would still find the evidence resulting from the search of the vehicle's interior to be admissible. The initial discovery of contraband in the vehicle's interior resulted from an observation that does not constitute a "search" within the meaning of the Fourth Amendment or the Iowa Constitution, and the evidence was in the officer's "plain view" while the encounter remained consensual. The convictions are affirmed.

**AFFIRMED.**

---

high crime rate was the reason he had run the vehicle's license plate number and stopped to converse with the two. By explaining the interaction was motivated by an ongoing desire to canvass the area, the coercive effect of the comment was lessened, as the comment represented that Bean was of no greater interest to Officer Hofbauer than was any other person who frequented the area.

However, even a pat down executed consensually impacts our analysis. Under the Iowa Constitution, article I, section 8, a pat down "is a factor to be considered in determining the voluntariness of the search." *State v. Pals*, 805 N.W.2d 767, 782 (Iowa 2011). "[S]ome physical touching" by an officer "might suggest a seizure." *Wilkes*, 756 N.W.2d 838, 842–43. Yet, after the consensual pat down occurred, our review of the totality of the circumstances indicates there was no seizure giving rise to the protections of the Fourth Amendment and article one, section eight of the Iowa Constitution.